[No. 5926. Decided April 3, 1906.]

CORA ATTEBERY *et al., Plaintiffs and Appellants,* v. B. F. O'NEIL *et al., Defendants and Appellants.*[1]

MORTGAGES—BONA FIDE PURCHASER—RECORD—NOTICE—EQUITABLE CLAIM—NOT APPEARING OF RECORD. A mortgagee is a *bona fide* purchaser for value without notice where, at the time the mortgagor acquired title to the mortgaged premises, he was a widower living on the land with minor children, the mortgage was joined in by the mortgagor's second wife, and there was nothing of record and no actual notice to show that the first wife had an equity in the land by reason of an equitable interest or title in the mortgagor prior to her death.

SAME—STRANGER TO CHAIN OF TITLE. The record of a mortgage executed by one outside the chain of title is not constructive notice of any equity or claim.

SAME—ACTUAL NOTICE—MINORS LIVING WITH PARENT. The fact that minor children were living on the land with their father at the time a mortgage was executed by the father would not import notice of any claim on their part.

Cross-appeals from a judgment of the superior court for Spokane county, Neal, J., entered January 2, 1905, upon findings by the court after a trial on the merits without a jury, in an action of ejectment. Reversed and action dismissed.

*Mark F. Mendenhall, Wm. E. Richardson,* and *Harry A. Rhodes,* for plaintiffs.

*A. E. Gallagher* and *W. J. Thayer,* for defendants.

1Reported in 85 Pac. 270.

PER CURIAM.—On the 13th day of September, 1884, the Northern Pacific Railroad Company agreed to convey the south half of section 31, township 21, North, Range 45, East, W. M., in Spokane county, to Adelbert H. Wheeler, by written contract of that date. On the 9th day of October, 1884, said railroad company agreed to convey lots 3 and 4, of section 5, township 20, North, Range 45, East, W. M., in Whitman county, to Thomas Coakley, by a like written contract. Coakley thereafter assigned his contract to Wheeler, and Wheeler assigned both contracts to M. M. Cowley as security. On the 26th day of June, 1887, Wheeler agreed to convey the lands embraced in both contracts to Hardin T. Attebery, in consideration of sixty bushels of wheat per acre, to be delivered in six annual installments of ten bushels to the acre each. At the instance of Wheeler, this contract was entered into between Attebery and Cowley, to whom the railroad contracts had been assigned. Some time thereafter the indebtedness due from Wheeler to Cowley was paid or taken up, and at the request of the former the railroad contracts and the wheat contract were assigned by Cowley to Ham & Son.

During the years 1888, 1889 and 1890, something over thirteen thousand bushels of wheat were delivered by Attebery to Ham & Son, under the above contract. In the latter part of the year 1890, D. T. Ham, the surviving partner of the firm of Ham & Son, agreed to accept $4,500 in cash in lieu of the balance of the wheat to be delivered under the wheat contract, and Attebery, the other party to the contract, agreed to pay that amount. The necessary assignments were thereupon executed to enable Attebery to obtain title from the railroad company, and on the 26th day of February, 1901, the lands embraced in both contracts were conveyed to Attebery by the railroad company. At or about the same time, Attebery and Samantha Attebery, his daughter, mortgaged the premises to the Deming Investment Com-

pany, for about $5,000, to enable them to make payment to
D. T. Ham in satisfaction of the wheat contract.

Upon the execution of the wheat contract in 1887, Attebery,
his wife and three daughters entered into possession of the
lands described therein. In December, 1888, after the de-
livery of the first installment of wheat under the wheat con-
tract, amounting to forty-two hundred bushels, the wife of
Attebery, and the mother of the present plaintiffs, died in-
testate. It does not appear that any administration was ever
had upon her estate. Some time prior to March 20, 1893,
Attebery remarried, and on that day he and his second wife
mortgaged the above described lands to the defendant O'Neil,
to secure the payment of the sum of $1,891.50. This mort-
gage was regularly foreclosed, and the defendant O'Neil now
holds and claims the land under and by virtue of a sheriff's
deed. The plaintiffs brought this action as heirs at law of
their deceased mother, to recover an undivided one-half in-
terest in the property, and for an accounting of the rents and
profits. The court below awarded them an undivided seven
eighty-thirds of the property, and a like proportion of the
net rents and profits. From this judgment both parties have
appealed.

The two principal questions presented on the appeal are,
(1) Did the mother of the plaintiffs have an interest in the
property in controversy which passed to her children by op-
eration of law upon her death? and (2) is the defendant
O'Neil a *bona fide* purchaser for value without notice? The
conclusion we have reached on the last question is decisive of
the case. The court below found that the defendant O'Neil
had full notice and knowledge of the right, title and interest
of the plaintiffs as heirs of their deceased mother, at the time
of the execution of the mortgage under which he claims title,
but with this finding, we cannot agree. It is not claimed that
O'Neil knew the former Mrs. Attebery, or knew that she or
her children had or claimed any interest in the property,
until long after the execution of the mortgage under which

he now holds. Nor did he have record notice. The only instrument of record affecting the title, aside from the deeds to Attebery, was the mortgage executed by Attebery and his daughter to the Deming Investment Company. The record of this mortgage was no notice of any claim on the part of the children, for as to them it was without the chain of title. The utmost notice it imported was that Attebery was unmarried at the time of its execution. Nor is there any merit in the contention that the residence of the plaintiffs upon the land with their father gave notice to third parties of any claim they might have to the premises. The occupation of land by minor children with their parents is entirely consistent with the full legal and equitable title in the parents, and is not of itself any notice of a claim on the part of the children. The court would perhaps have been justified in finding that the defendant O'Neil knew that the plaintiffs were the children of Hardin T. Attebery, by a former wife, but this would not be sufficient to charge him with notice of their claim to the property.

A purchaser must, no doubt, exercise due diligence to ascertain the status of his several grantors at the time they acquired and conveyed the property, but he is not bound to go outside of and beyond the record to ascertain whether any such grantor had an equity in the premises before he acquired his title, and whether he was married or single when such equity was acquired. If such were the case, records and deeds would be of little avail, and the evils resulting from the adoption of such a rule would far outweigh any benefits to be derived from it. If a grantee is unmarried at the time he acquires title to the property, and the record discloses no equity in him prior to the conveyance, a purchaser is under no obligation to look beyond this, and if he parts with his money in good faith, and without notice of any latent equity, the law will protect him.

We are therefore of the opinion that the defendant O'Neil

is a *bona fide* purchaser for value, without notice, and that he took the title free from any claim or equity that the plaintiffs or their deceased mother may have had in the premises. The judgment is therefore reversed, with directions to dismiss the action.