(March 27, 1918.)

JOHN EWALD, Respondent, v. W. W. HUFTON, HESTER B. HUFTON, W. W. HUFTON, Administrator of the Estate of IDA HUFTON, Deceased, GRATTA LOUISE HUFTON, IDA HUFTON and ADA COUNTY, IDAHO, Appellants.

[173 Pac. 247.]

MORTGAGES—COMMUNITY PROPERTY—NATURE OF ESTATE IN—DESCENT OF—BONA FIDE PURCHASER.

1. In case of the death of either husband or wife, intestate, his or her half of the community property shall descend equally to the legitimate issue of his, her or their bodies, under Rev. Codes, sec. 5713, prior to amendment.

2. Under the laws of this state no distinction is made between husband and wife as to the degree, quantity, nature or extent of the interest each has in the community property.

3. Upon the dissolution of the community by the death of either spouse, the survivor became a tenant in common with the heirs of the deceased member in the community property then in existence.

4. Prior to the amendment of Rev. Codes, sec. 5713, where either the husband or wife died intestate, leaving legitimate issue, a mortgage given upon the community property by the survivor is a nullity in so far as it attempts to create a lien upon the interests of the children.

5. The defense of *bona fides* can be maintained only in favor of a title, though it may be defective, which a *bona fide* purchaser has, and it is not available for the purpose of creating a title.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Carl A. Davis, Judge.

Action to foreclose mortgage. Judgment for plaintiff. *Reversed.*

J. C. Johnston and J. J. McCue, for Appellants.

There being no community debts against the community property at the death of the wife, her one-half of the community property descends absolutely unencumbered to the heirs of their body under sec. 5713, Rev. Codes, before amendment, and the husband has no longer any control over the estate and property descended to the minor heirs of their body at the time of the death of the wife, because any trust that the surviving spouse had of their estate was to administer the estate to the end of paying community debts, and the law being fulfilled in that regard, and no duty further to perform, the trust estate, if indeed he ever had or held any passed out of him, and the estate of the minor heirs vested absolutely in them and rested in them and not in the surviving spouse. (*Broad v. Broad,* 40 Cal. 493, 496; *Veramendi v. Hutchins,* 48 Tex. 531; Freeman on Cotenancy, 2d ed., sec. 149; *Johnson v. Harrison,* 48 Tex. 257; *Wilson v. Helms,* 59 Tex. 680; *Johnson v. Harrison,* 48 Tex. 267; *Bell v. Schwarz,* 56 Tex. 353; *Clark v. Nolan,* 38 Tex. 416; *Newman v. Cooper,* 46 La. Ann. 1485, 16 So. 481; *Bossier v. Herwig,* 112 La. 539, 36 So. 557; *Walker v. Kimbrough,* 23 La. Ann. 637; *Le Bleu v. North American Land & Timber Co.,* 46 La. Ann. 1465, 16 So. 501; *Johnston v. San Francisco Sav. Union,* 75 Cal. 134, 7 Am. St. 129, 16 Pac. 753; *Wortman v. Vorhies,* 14

Wash. 152, 44 Pac. 129; *Warburton v. White,* 18 Wash. 511, 52 Pac. 233, 532; *Bank of Montreal v. Buchanan,* 32 Wash. 480, 73 Pac. 482; *Bjmerland v. Eley,* 15 Wash. 101, 45 Pac. 730.)

The estate of the deceased wife vested in the children *instanter* at the death of the wife, and the survivor and the heirs then held as tenants in common. (*Clark v. Nolan,* 38 Tex. 416; *McAliester v. Farley, Jury & Co.,* 39 Tex. 553; *Schlarb v. Castaing,* 50 Wash. 331, 97 Pac. 289; *Broad v. Murray,* 44 Cal. 228; *Johnston v. Bush,* 49 Cal. 198; 17 Am. & Eng. Enc. Law, 2d ed., 661; *McDougal v. Bradford,* 80 Tex. 558, 16 S. W. 619; *Powell v. Powell,* 22 Ida. 531, 126 Pac. 1058, 1 Washburn on Real Property, 6th ed., p. 538, secs. 875, 876, *Coe v. Sloan,* 16 Ida. 49, 100 Pac. 354.)

C. Homer Lingenfelter, for Respondent.

A *bona fide* purchaser and a *bona fide* mortgagee stand in precisely the same position in regard to secret claims, legal or equitable, both being regarded as purchasers of the legal title. (27 Cyc. 1183; 2 Jones on Mortgages, 7th ed., sec. 710, p. 86.)

Not only is a *bona fide* mortgagee regarded as a purchaser of the legal title at common law and in those American states accepting the modern English theory of a mortgage, but it is also so regarded in the so-called ''lien theory states'' with which our own state under the decisions of *Brown v. Bryan,* 6 Ida. 1, 51 Pac. 995, and *Hannah v. Vensel,* 19 Ida. 796, 116 Pac. 115, might be considered as included. (1 Jones on Mortgages, 7th ed., sec. 14, pp. 18, 19, and authorities cited; *Fair v Howard,* 6 Nev. 304; *Herff v. Griggs,* 121 Ind. 471, 23 N. E. 279.)

A *bona fide* mortgagee is entitled, under our theory of the instrument under which he claims, to the same protection as is accorded a *bona fide* purchaser. The plaintiff is then entitled to protection under the rule in *Von Rosenberg v. Perrault,* 5 Ida. 719, 51 Pac. 774.

Even if the relationship be considered as a tenancy in common, the plaintiff is entitled to protection. (*Johnston v. San Francisco Savings Union,* 63 Cal. 554; *Patty v. Middleton,* 82 Tex. 586, 17 S. W. 909.)

"The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable." (*Edwards v. Brown,* 68 Tex. 329, 4 S. W. 380, 5 S. W. 87; *Hensley v. Lewis,* 82 Tex. 595, 17 S. W. 913; *Saunders v. Isbell,* 5 Tex. Civ. 513, 24 S. W. 307; *Smitheal v. Smith,* 10 Tex. Civ. 446, 31 S. W. 422; *Hill v. Moore,* 62 Tex. 610; *Lyster v. Leighton,* 36 Tex. Civ. 62, 81 S. W. 1033; *Mitchell v. Schofield* (Tex. Civ.), 140 S. W. 254; *Woodburn v. Texas Town Lot & Imp. Co.* (Tex. Civ.), 153 S. W. 365; *Schwabacher Bros. & Co. v. Van Reypen,* 6 Wash. 154, 32 Pac. 1061; *Daly v. Rizzutto,* 59 Wash. 62, 109 Pac. 276, 29 L. R. A., N. S., 467.)

The community is a sort of *quasi* partnership. A partner of a legal partnership in whose name the partnership property does not appear of record, and of whose claim there is no notice, has, after dissolution, no right, legal or equitable, to complain of a misapplication of this partnership property as against a *bona fide* purchaser from the partner who has the apparent record legal title and ostensible power of disposition over the property. The heirs of such defrauded partner could stand in no better position than he himself, either at law or in equity. The heirs' rights are solely against the defaulting partner. (*Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107.)

RICE, J.—This is an action to foreclose a mortgage upon certain real estate in Ada county. It appears that the property was community property of appellant W. W. Hufton and his wife, Ida Hufton; that Ida Hufton died on September 16, 1909, and left as her heirs the appellants, Gratta Louise Hufton, who at the time of her mother's death was at the age of four years, and Ida Hufton, who was born at the time of her mother's death. Appellant married his second wife, Hester B., April 12, 1911. On April 10, 1912, appellant and his wife, Hester, executed the mortgage in-

volved in this action.   On March 23, 1914, appellant was ap-
pointed administrator of the estate of Ida Hufton, deceased,
and duly qualified as such and settlement of the estate was
still pending at the time of the trial of this action in the dis-
trict court.   It further appeared that at the time of the death
of Ida Hufton there were no mortgages or liens, nor any debts
or claims against the community property.   The mortgage
was executed by the mortgagor as his personal and private
business, and not for the payment of any charge or debt
against the community property.

The respondent claims that he is a *bona fide* mortgagee for
a valuable consideration, in good faith and without notice.
The appellants contend that the mortgage is valid only to the
extent of the husband's interest in the property, which at the
time the mortgage was given was one-half thereof.

In order to determine the questions presented on this ap-
peal, it is necessary to ascertain the nature of the estate of
the husband and wife in community real estate.

In the state of Texas, by a long line of authorities it is
held that when land is conveyed to the husband, no benefi-
cial interest of the wife therein appearing upon the face of
the deed, her interest in the same by virtue of the marital
community relationship, is equitable, the entire legal title be-
ing vested in the husband, and upon her death her heirs suc-
ceed to no such legal title or interest in the land as would
defeat the rights of an innocent *bona fide* purchaser for value
from the husband.   (*Woodburn v. Texas Town Lot & Im-
provement Co.* (Tex. Civ.), 153 S. W. 365,—in which many
Texas cases are cited in support of the doctrine.)

This doctrine seems to have been clearly stated for the first
time in Texas in the case of *Edwards and Wife v. Brown,* 68
Tex. 329, 4 S. W. 380, 5 S. W. 87.   In the opinion on motion
for rehearing in that case, at p. 334, the court called atten-
tion to an act passed by the legislature of that state on Feb-
ruary 5, 1840 (Laws of Republic 1840, p. 153), directing the
mode by which land should be conveyed in that state, and the
effect of which was to place the legal title of all property con-

veyed according to its provisions in the grantee named in the conveyance.

In none of the Idaho cases which have come to our attention has the Texas doctrine been enunciated. The reasoning in the case of *Jacobson v. Bunker Hill etc. Min. etc. Co.,* 3 Ida. 126, 28 Pac. 396, and *Coe v. Sloan,* 16 Ida. 49, 100 Pac. 354, appears to be based upon a contrary view. This is true also of the case of *Von Rosenberg v. Perrault,* 5 Ida. 719, 51 Pac. 774, as we understand that case.

Community property is defined in Rev. Codes, sec. 3060. Sec. 2686 was, prior to the amendment thereof by Sess. Laws 1915, chap. 75, p. 186, as follows:

"The husband has the management and control of the community property, with the like absolute power of disposition (other than testamentary) as he has of his separate estate; but such power of disposition does not extend to the homestead or that part of the common property occupied or used by the husband and wife as a residence."

This section, as quoted, was in force when the cause of action in this case arose.

Rev. Codes, sec. 5713, in force at the time of the death of Ida Hufton, was as follows:

"Upon the death of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivor, to the exclusion of collateral heirs, subject to the community debts, the family allowance, and the charges and expenses of administration."

In the case of *Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544, 39 L. R. A., N. S., 1107, this court said:

"The statute, however, has given to the husband no better or higher title to the community property than it has given to the wife. The only difference or distinction whatever the law has made between the husband and wife with reference to community property is that during the continuance of the community the husband is the managing agent, vested with absolute power of disposition of the property, and that the wife cannot sell or encumber such property except in specified instances. The receipts, however, from any disposition that may be made of the property still remain community property, and the wife's interests in the receipts from any sale of community property are just as great as they were in the original community property which was thus sold or transferred."

It will be noticed that none of the statutes quoted make any distinction as to whether the paper title to the community property rests in the one or the other of the spouses. Each had the same right of testamentary disposition of his or her half of the community property. In case of the death of either the husband or wife, intestate, his or her half of the community property (not an interest therein) descended equally to the legitimate issue of his, her or their bodies.

Under these statutes we think, following the case of *Kohny v. Dunbar, supra,* that it was the intention to make no distinction between husband and wife as to the degree, quantity, nature or extent of the interest each has in the community property. (*Adams v. Black,* 6 Wash. 528, 33 Pac. 1074; *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Warburton v. White,* 176 U. S. 485, 20 Sup. Ct. 404, 44 L. ed. 555; *Arnett v. Reade,* 220 U. S. 311, 31 Sup. Ct. 425, 55 L. ed. 477.)

Upon the dissolution of the community by the death of either spouse, the survivor became a tenant in common with the heirs of the deceased member in the community property then in existence. There is no warrant in the statute for the position that the survivor was in any sense a trustee holding title for the benefit of the heirs of the deceased. We are not

in accord with the case of *Von Rosenberg v. Perrault, supra,* in so far as it holds to the contrary.

In view of the facts in this case as outlined in the beginning of this opinion, it follows that the mortgage in this case, to the extent that it purports to cover the interests of the children, was a nullity and created no lien thereon. (*Johnston v. San Francisco Savings Union,* 63 Cal. 554, 75 Cal. 134, 7 Am. St. 129, 16 Pac. 753; *Coe v. Sloan, supra; Adams v. Black, supra; Wortman v. Vorhies,* 14 Wash. 152, 44 Pac. 129; *Newman v. Cooper,* 46 La. Ann. 1485, 16 So. 481; *Bossier v. Herwig,* 112 La. 539, 36 So. 557; *Walker v. Kimbrough,* 23 La. Ann. 637; *Le Bleu v. North American Land & Timber Co.,* 46 La. Ann. 1465, 16 So. 501; *Fairex v. New Orleans City Ry. Co.,* 36 La. Ann. 60.)

Having reached the foregoing conclusion, there is left no basis for the defense of *bona fides.* The doctrine of *bona fide* purchaser is peculiarly available for purposes of defense. (See the discussion in 2 Pomeroy, Equity Jurisdiction, sec. 735 et seq.) This defense can be maintained only in favor of a title, though it may be defective, which a *bona fide* purchaser has, and it is not available for the purpose of creating a title. This view is well expressed by Mr. Justice Bean in the case of *Allen v. Ayer,* 26 Or. 589, 39 Pac. 1, as follows:

"Where the title to land passes, though obtained by fraud and the deed is therefore voidable, one who purchases from the grantee in good faith and without notice will be protected, because he had a title which he could and did convey, but when the deed was never in fact delivered, the grantee can convey no title for the protection of which the plea of a *bona fide* purchaser can be invoked."

In the case of *Daniel v. Mason,* 90 Tex. 240, 59 Am. St. 815, 38 S. W. 161, lands had been conveyed to a married woman, who, without being joined by her husband, conveyed the same by warranty deed to an innocent purchaser for value. Under the Texas statute she had no capacity to convey during coverture. The court said that it knew of no instance in which protection had ever been extended to a *bona fide* purchaser for value from the holder of a legal title

with no capacity to contract. (See, also, *Jackson v. Lynn,* 94 Iowa, 151, 58 Am. St. 386, 62 N. W. 704; *Everts v. Agnes,* 4 Wis. 343, 65 Am. Dec. 314, 6 Wis. 453; *Dixon v. Bristol Savings Bank,* 102 Ga. 461, 66 Am. St. 193, 31 S. E. 96; *Mays v. Shields,* 117 Ga. 814, 45 S. E. 68; *Bjmerland v. Eley,* 15 Wash. 101, 45 Pac. 730; *Abee v. Bargas* (Tex. Civ.), 65 S. W. 489; *Crawford v. Hoeft,* 58 Mich. 1, 23 N. W. 27, 24 N. W. 645, 25 N. W. 567, 26 N. W. 870; *McGinn v. Tobey,* 62 Mich. 252, 4 Am. St. 848, 28 N. W. 818.)

Respondent contends that the *bona fide* purchaser of a legal title from the husband, after the death of the wife, takes free from the secret claims of her heirs. As already shown, our conclusion is that the surviving husband has no power to convey such legal title because it did not rest in him. The claims of the heirs of the deceased wife are not secret claims within the meaning of the rule. In the case of *Atteberry v. O'Neil,* 42 Wash. 487, 85 Pac. 270, it was said, with reference to the marriage relationship, that a purchaser must no doubt exercise due diligence to ascertain the status of his several grantors at the time they acquired and conveyed the property. The recording statutes, Rev. Codes, secs. 3159 and 3160, do not afford protection in cases of this kind, because the title of the deceased wife and of her heirs vests by virtue of the law and not through a conveyance. The protection afforded by reason of the recording acts is purely statutory, and is not to be extended beyond their reasonable import.

As we understand the case of *Sadler v. Niesz,* 5 Wash. 182, 31 Pac. 630, 1030, and the Washington cases based thereon, the decision rests upon estoppel of the wife to claim her community interest. In this case no estoppel could be claimed against the deceased wife, Ida Hufton, and it is plain that estoppel cannot be invoked against infants, who are unable to contract or to take any action for the protection of their property rights.

The judgment is affirmed as against W. W. Hufton, Hester B. Hufton and their interests in the property, and reversed in so far as it affects the interests of Gratta Louise Hufton and Ida Hufton, the heirs of, and W. W. Hufton, as adminis-

trator of the estate of Ida Hufton, deceased. The trial court is directed to modify the judgment entered so that it shall apply only to defendants W. W. Hufton, Hester B. Hufton and their interests in the property described in the complaint. Costs awarded to appellants.

Budge, C. J., and Morgan, J., concur.